R. A. Anthony, Appellee, v. W. A. Heiny et al., Appellants.

No. 41718.

October 25, 1932.

Rehearing Denied April 6, 1933.

1348

Howard L. Bump, for appellee.

Watson & Watson, for appellants.

Vander Ploeg & Heer, for intervener, appellee.

EVANS, J.—On May 24, 1931, the plaintiff obtained a judgment at law against the defendant, W. A. Heiny, for approximately $16,000.

In June of the same year he brought this suit in equity in aid of execution under his judgment. The defendant Ada Heiny Spurgin, is the daughter of the defendant W. A. Heiny; defendant Ned Spurgin is the husband of Ada, and the other defendants Spurgin are their children. On May 22, 1922, Heiny conveyed to his daughter, Ada, and to her children in severalty, tracts of land amounting to a sum total of 280 acres, reserving to himself in each case a life estate therein. He also conveyed to Ned Spurgin certain land acquired by him from the brother of Ned Spurgin. The deeds to these conveyances were recorded in December, 1922. It is the contention of plaintiff that W. A. Heiny was insolvent at the time these conveyances were made. The question of fact thus presented is sought to be proved by deduction from after events subsequent to the date of the deeds. If the defendant was insolvent, he was such because of his connection, as a partner, in a private bank, which closed its doors in August, 1930. Heiny in fact had a partner's interest in two private banks. One was the Bank of Beech. Beech was his home town. The bank was capitalized at $10,000 and was solely owned by the defendant Heiny and his daughter Ada, and her husband, Ned. The daughter had a three-fifths interest; her husband, a one-fifth interest; and Heiny, a one-fifth interest.

Heiny was also a partner in the private bank known as the Bank of Pleasantville. This bank was capitalized at $35,000, and was owned by eight or ten partners, including the brother of Heiny.

Heiny's interest therein was four thirty-fifths and his investment $4,000. Heiny's alleged insolvency is predicated as a deduction from the final insolvency of the Bank of Pleasantville in 1930. The plaintiff was a depositor in the Bank of Pleasantville to the amount of $6,000. Heiny was liable, therefore, solely as a partner in said bank, and not otherwise. His alleged insolvency is not predicated to any extent upon any individual obligations as distinguished from his liability for partnership debts. At the time of the conveyances under attack, the Bank of Pleasantville was a going concern in good repute. It paid annual dividends up to and including 1924. As early as 1922 its discounts had begun to lose their fluidity and it had borrowed from the War Finance Corporation about $100,000. It had loans and discounts to the amount of several hundred thousand dollars, which were considered at that time to be good and collectible.

Some seven months after the conveyance in question Heiny was offered $8,000 for his interest in this bank by certain of his partners, —the par value of his shares being $4,000. A like offer was made to another partner, by his co-partners. Several years after such conveyance one of the partners, Dyer, who had a share of the par value of $1,000 sold it to one of the partners for $1,800. It also appears that the Bank of Beech, which was owned by the Heiny family, carried a large deposit account in the Bank of Pleasantville ranging from $20,000 to more than $30,000. On December 31, 1922, such account amounted to $32,482. The Bank of Beech went into voluntary liquidation in 1926. That is to say the owners of it, being the members of the Heiny family, paid off all depositors "outside" of the family. At that time its deposit in the Bank of Pleasantville was even greater than in December, 1922. These transactions present concrete evidence of the point of view of the partners as of those dates. The line of approach to the question of insolvency adopted by the plaintiff herein is to trace the assets of the partnership as they were in 1930 back to 1922 and to treat every borrower and notemaker, who proved to be insolvent in 1930 as already insolvent in 1922. Expert witnesses were permitted to testify to the alleged insolvency of these makers as of the year 1922 and to predicate their opinion upon the fact that they had proved to be such in the culmination of events. This is a "hindsight" method of proof, if we may venture the use of such a term. There is a sense in which an insolvent of today may be deemed to have been potentially insolvent

for many years past. When farm commodities were paying a return on a valuation of $200 an acre for his farm, his foresight indicated that he was solvent and even wealthy. But when in the course of time values evaporated from farm and from commodity and the returns from the farm became less than the interest upon the mort-gage, his new point of view indicated that he had been insolvent from the beginning and that he had been dealing with hallucinations and living in a fool's paradise. It is in this sense and by this method that Heiny is declared to have been insolvent in 1922. His insolvency did not antedate the insolvency of the Bank of Pleasant-ville. His insolvency was not the *cause* of the bank's insolvency. On the contrary it was the *result* of it. The cause of the bank's insolvency was still further back. This cause was the insolvency of the bank's debtors. Such insolvency of the bank's debtors did not occur simultaneously. Nor did the various insolvencies result from a single or sudden emergency. Good debtors became bad debtors; and this process continued for a period of eight years. The good debtor became insolvent because his own debtors had become such, and because of a great and universal depression in values of all properties. In short one insolvency became the efficient cause of another, and of another. The "row of bricks" fell one upon the other in succession as a result of the extraordinary conditions, which have been universally recognized as exceptional and even incredible in their possibilities. It is manifest upon this record that if the reasonable hopes and expectations of the managers of the bank in 1922 and in the years immediately following, could have been real-ized, the solvency of the bank would have continued. Its insolvency was the result not of conditions as they existed in 1922, but in the after events which could not ordinarily have been foreseen. At what point of time the insolvency of the bank became accomplished or inevitable, would be difficult to say. We are satisfied, however, on this record that this point of time had not been reached in 1922. Such was the finding of the district court and we are satisfied with the conclusion thus reached.

We do not overlook the contention of plaintiff that Heiny sensed his insolvency in 1922 and that the conveyances made by him, and which are here under attack, are evidence of such fact. The wife of Heiny had died in 1919. It appears in his behalf that it had long been the understanding in the family since the death of the mother, and the understanding between husband and wife prior to

her death, that the property should be disposed of by the surviving husband in the very manner in which it was done. The particular stimulus to the conveyance at that time was that Heiny was about to be married a second time. He was so married a short time thereafter. The evidence is voluminous and we can not deal with it in detail. The conduct of Heiny was quite consistent with the circumstances thus detailed.

■ II. The Bank of Pleasantville closed its doors in August, 1930. Some ten days later, the defendant, Heiny, conveyed to his daughter, Ada, his life estate reserved by him in the conveyances above considered. This conveyance is assailed by the plaintiff in like manner as the former conveyances. The failure of the Bank of Pleasantville and the liability of Heiny for its debts, present a clear case of insolvency. If this conveyance by Heiny had been voluntary as the first conveyances were, then without doubt the plaintiff would have been entitled to the relief prayed. But it is contended for the grantee that this conveyance was for a full and valuable consideration and evidence to that effect is made to appear in the record. If the conveyance was supported by sufficient consideration, and if such consideration was an existing indebtedness owing to the grantee, then the conveyance may not be deemed fraudulent but only as a preference of creditors. It appears that at the time of the liquidation of the Bank of Beech, as to outside depositors, the bank held the three notes of Heiny for a sum total of nearly $11,000. The daughter, Ada, held the certificate of the bank for a deposit of $11,000. The three owners of the bank agreed that the three notes of Heiny should be turned over to Ada and applied upon her claim. In that sense Heiny became a debtor to Ada. It was to secure this debt that he purported to transfer to her his life estate previously reserved by him. No direct evidence was offered on the trial as to the value of this life estate. The question of whether the conveyance was an excessive payment of the debt, was not raised nor dealt with in the evidence. On another branch of the appeal, however, it appears that the plaintiff sold such life estate at execution sale without redemption for $1,500. We shall assume therefore that such was its value. We assume that in the final settlement of the business of that particular partnership, the daughter Ada would be liable for her own proportion of the loss and that it could not all be charged against Heiny. But in view of the fact that the amount due from Heiny was largely in excess of the value of the property con-

veyed as shown by the execution sale, we have no need to consider that question. It is enough that the conveyance was supported by a bona fide consideration of a pre-existing debt and that such debt was much larger than the value of the property conveyed. On this branch of the case, the district court found for the plaintiff and decreed its judgment to be a lien upon said life estate. In this, we think the court lost sight of the fact that the conveyance was supported by a full consideration and was for that reason unassailable. In this, the court erred.

III. The liquidation of the business of the Bank of Beech, as between the partners themselves, was placed in the hands of the son-in-law, Ned Spurgin. He has in his hands uncollected paper of doubtful value. The plaintiff prayed that he have a lien on the interest of Heiny in such uncollected paper and the decree of the court awarded him one-fifth of such assets. No accounting was had in the evidence. The decree at that time was general in its terms and awarded to the plaintiff a one-fifth interest. We think the decree was not justifiable in that form. It does not appear from the evidence whether anything will be due to Heiny upon the final settlement. The plaintiff should be deemed entitled to take whatever might otherwise be due to Heiny, but he is not necessarily entitled to take one-fifth of the assets. His right will be preserved to the extent that he be permitted to take whatever sum on a final accounting shall be found due to Heiny and not otherwise. This feature of the decree is modified to this extent.

IV. After the decree, the plaintiff took execution under its judgment and sold the life estate in controversy at execution sale. Pursuant to such execution sale the plaintiff demanded and received a sheriff's deed for such real estate. The defendant filed an application in the court in which the judgment was rendered asking that the plaintiff be required to accept a sheriff's certificate of sale in lieu of the sheriff's deed received by him. This application was denied by the court and from such order the defendant, grantee, has appealed. The order appealed from was entered in the law case No. 8165. The demand of the plaintiff for a sheriff's deed in lieu of a sheriff's certificate was predicated on the fact that the defendants had taken an appeal in the equity case. The equity case is purely auxiliary. Its function is in aid of the execution under the judgment at law. The execution was presumptively issued in the law action, in which the judgment was entered. Even if in fact it

purported to be issued in the equity case, its legal effect was the same as though it had been issued in the law case. There was no appeal from that judgment. The plaintiff therefore was not entitled to a sheriff's deed without right of redemption. The statute relied on by the plaintiff is a severe one and should be strictly construed. The function of the equity suit was to clear the way to the plaintiff to levy execution on the land under his judgment. In the absence of appeal from the judgment, execution sale thereunder would necessarily be subject to redemption. Indeed the decree appointed a receiver to collect the rents and profits during the year of redemption. There was, however, no warrant for this provision. This was not a mortgage foreclosure, nor was any pledge of rents and profits involved. We hold that an appeal from the decree did not bar redemption by the debtor from an execution sale under the judgment. In view of our holding in the second division hereof the question at this point has lost its importance and we need not further discuss it.

On the plaintiff's appeal, the decree is affirmed. On the defendants' appeal it is reversed in part and modified and affirmed in part. The right of plaintiff to an accounting as between the partners in the Beech Bank, is reserved to him. If upon such accounting it be found that any sum is due to the defendant, Heiny, the same shall inure to the benefit of the plaintiff. But the plaintiff is not to be deemed as a matter of law necessarily entitled to one-fifth of any of the assets. The actual amount due him, if any, is to be determined in the accounting. On defendants' appeal, the decree is reversed as indicated in Division II hereof. On the defendants' appeal from the order of taxation of costs below, our reversal here necessarily supersedes such order and reverses the same. This reversal is subject to the discretionary power of the district court to apportion costs in the district court. The costs in this court will be taxed to the plaintiff. It is so ordered.

Reversed in part on defendants' appeal; affirmed on plaintiff's appeal.

STEVENS, C. J., and FAVILLE, ALBERT, KINDIG, and BLISS, JJ., concur.